UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SACV 18-00236 AG (JCGx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |

**Proceedings:**  **[IN CHAMBERS] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DKT. 18)**

The proposed settlement resolves the derivative claims pending in four related stockholder derivative actions brought on behalf of Puma Biotechnology. The Court GRANTS Plaintiff's unopposed motion for preliminary approval of derivative settlement. (Dkt. 18.)

**1. BACKGROUND**

Puma is a biopharmaceutical company that developed and marketed a breast cancer treatment drug called NERLYNX ("neratinib"). Plaintiff's derivative claims are based on Puma's allegedly false and misleading statements about neratinib's safety and efficacy. Plaintiff Rommerswael, a Puma stockholder, alleges that in July 2014 Puma executives became aware of poor results from the ExteNET clinical trial. (Compl. Dkt. 1 at ¶ 5.) Among other things, nearly 40% of trial participants experienced grade 3 or 4 diarrhea, and the disease-free survival (DFS) rate was only 2.3% higher for the neratinib group than for the placebo group. (*Id.*) But in a press release after the trial results, Puma CEO Alan Auerbach reported a 33% improvement in the DFS rate and low patient drop-out rates. (*Id.* at ¶¶ 6-7.) Plaintiff alleges these statements were contrary to the facts on hand.

Plaintiff filed this lawsuit in February 2018. He alleges that Puma's Board of Directors issued misleading Proxy Statements and thus incurred major financial and legal risks for Puma. He

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-00236 AG (JCGx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

brought stockholder derivative claims against Puma's CEO, Senior VP, and five other directors for violation of the Securities Exchange Act (15 U.S.C. § 78 *et seq.*), breach of fiduciary duty, and waste of corporate assets. (Another case related to these events was filed by Puma investors in this Court and is set for trial in 2019. *See Hsu v. Puma Biotechnology, Inc.*, No. 8:15cv00865-AG-SHK.)

## 2. PROPOSED SETTLEMENT

Considering recent, positive developments at Puma, plaintiffs Arnaud van der Gracht de Rommerswael, Paul Duran, Xing Xie, and Kevin McKenney (from four different suits) expect an early resolution of the derivative claims to be in Puma's best interests. *See* Stipulation (Dkt. 17-1) at 5. Plaintiffs issued settlement demands in February and April this year and have been negotiating with Defendants since then to accomplish a global settlement. (*Id.*) After negotiations before private mediator Gregory P. Lindstrom, the parties reached a settlement ("Settlement") to resolve four related stockholder derivative actions. (Dkt. 19 at 6.) Puma, acting through its independent, non-defendant directors, reviewed the allegations and settlement terms and concluded the Settlement was in the company's best interests. The proposed settlement ("Settlement") provides for the following remedies, among others:

- Appointment of one new Independent Director to the Board;
- Stockholder input for the new Independent Director and future director nominees;
- Requirement that two-thirds of the directors must satisfy heightened independence standards;
- Creation of Board-level Research and Development Committee to oversee product pipeline efforts and R&D efforts (including those regarding clinical trials) and to review and pre-approve material public disclosures;
- Formal continuing education programs for directors;
- Director stock ownership requirements;
- Annual assessments of Puma's financial reporting and disclosures by management and the Audit Committee;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | SACV 18-00236 AG (JCGx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

- Requirement that the Audit Committee inform the Board of any material suspected errors in the books and report to the Board if Puma appears to have insufficient liquidity.

*See* Stipulation (Dkt. 17-1) at Ex. A. All four related stockholder derivative actions are to be dismissed with prejudice. (*Id.* at 9.) The Plaintiffs (individually and on Puma's behalf), Plaintiffs' counsel, and Puma release all derivative claims connected to the defense, settlement, or resolution of the federal and state actions against the Defendants, Puma, and certain Related Persons. (*Id.* at 17-18.) The stipulation purports to release claims by "Applicable Puma Shareholders," meaning any persons who owned Puma common stock on the date of the stipulation and continue to hold it at the settlement hearing, with some exclusions. (Dkt. 17-1 at 9.)

The Settlement also provides that the Individual Defendants must cause their insurers to pay Plaintiffs' counsel $1,175,000 for attorney's fees and expenses within 10 days of entry of judgment. (Stip. at § 4.1.) Plaintiffs explain that this amount was negotiated after the material terms of the Settlement were agreed upon and with the mediator's assistance. (Dkt. 19 at 9.) Plaintiffs' counsel may separately apply to the Court for a service award of up to $1,500 for each named plaintiff, to be paid only upon Court approval. (*Id.* at § 4.2.) The Court's approval or not of the service awards will not affect the Settlement. (*Id.*)

## 3. LEGAL STANDARD

Courts may only approve a settlement agreement that is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Review of a proposed settlement generally involves two separate hearings. Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004). First the court makes a preliminary fairness evaluation. *Id.*  It then holds a final approval hearing, where it "takes a closer look at the proposed settlement, taking into consideration objections and any other further developments in order to make a final fairness determination." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-00236 AG (JCGx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

To determine whether a settlement agreement is fair, reasonable, and adequate, courts must consider various factors, including (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation omitted). "This is by no means an exhaustive list of relevant considerations." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Id.* "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

But at the preliminary approval stage, "a court determines whether a proposed settlement is 'within the range of possible approval' and whether or not notice should be sent to class members." *True*, 749 F. Supp. 2d at 1063; *see also* 4 W. Rubenstein, Newberg on Class Actions § 13:10 (5th ed.) (the primary objective a court at the preliminary approval stage is "to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing.") The "settlement need only be *potentially* fair." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original). If the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval," the court should grant preliminary approval of the class and direct notice of the proposed settlement to the class. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).

At any rate, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Hanlon*, 150 F.3d at 1026. Ultimately, "[s]trong judicial policy

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | SACV 18-00236 AG (JCGx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

favors settlements." *Churchill Vill., LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (omission and quotation marks omitted) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

## 4. ANALYSIS

### 4.1   Whether Settlement is Within Range of Possible Approval

Considering the benefit to Puma stockholders, arms-length negotiations before a qualified mediator, cost of continued litigation in four separate derivative actions, and other factors from *Staton*, the Court grants preliminary approval of the proposed Settlement.

The Settlement requires the Board of Directors to undertake reforms that confer significant benefits on Puma stockholders, though not pecuniary in nature. *See* above, Section 2. Courts recognize that "a corporation may receive a 'substantial benefit' from a derivative suit . . . regardless of whether the benefit is pecuniary in nature." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970). *See also Lewis v. Anderson*, 692 F.2d 1267, 1271 (9th Cir. 1982) ("While less tangible than recovery of money damages," corporate governance reforms that remedy alleged wrongdoing are "sufficiently beneficial to a corporation" to warrant settlement approval and fee award.")

Here, the reforms provide for more oversight over the Company's public disclosures, which are the key issue in these related lawsuits, and they provide for a more independent Board and tighter internal controls. For example, the appointment of a new Independent Director will help ensure that the Board is not controlled by insiders with separate interests from those of Puma stockholders. Also, the new requirement that Puma nonemployee directors own at least 10,000 shares of common stock will better align the directors' and stockholders' interests. (Dkt. 19 at 13.) And the creation of an R & D Committee will provide crucial oversight of Puma's clinical trials and development risks and is designed to avoid exactly the sort of problems that led to the current litigation. (Dkt. 19 at 14.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SACV 18-00236 AG (JCGx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

The Settlement also appears to be the product of arms-length negotiations between experienced and well-informed counsel. A "strong presumption of fairness" thus attaches to the Settlement. *See In re American Apparel, Inc. Shareholder Litig.*, No. CV 10-06352 MMM (JCGx) 2014 WL 10212865, at *8 (C.D. Cal. Jul. 28, 2014). The parties exchanged initial settlement demands, took discovery, and engaged in several months of negotiations, including phone and written communications and mediation. (Rifkin Decl., Dkt. 20 at ¶¶ 13-16, 31.) The independent, non-defendant directors of Puma reviewed the Settlement and found it to be in the company's best interests. All of this weighs in favor of preliminary approval.

Regarding Plaintiffs' counsels' fee award of $1,175,000, they explain that filing these lawsuits required extensive investigation, research, and review, including: reviewing Puma's press releases, public statements, SEC filings, and securities analysts' reports; researching applicable law regarding claims and defenses; reviewing Puma's documents produced in a related action; and preparing and responding to correspondence and settlement demands. (Rifkin Decl. at ¶ 32.) Plaintiffs note that the parties negotiated the fee award only after agreeing upon the principal Settlement terms. (*Id.* at ¶ 34.) And they point to other cases where counsel received a similar award for achieving corporate governance reform. (*Id.*) But given the short duration of these case, the Court requires Plaintiffs to provide more detail supporting the calculation of fees in their motion for final approval of settlement.

Finally, the risk and cost of continuing to litigate on multiple fronts is substantial. An early settlement is thus the best way to achieve the corporate reforms sought without incurring inordinate fees and making bilateral agreement decreasingly likely.

For these reasons and others, the Court finds this Settlement to be within the range of possible approval and preliminarily approves the Settlement.

### 4.2 Notice

<u>Content</u>. The proposed Notice describes the terms of the Settlement, including the fee award, the facts and considerations that contributed to the Settlement, the procedure for filing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-00236 AG (JCGx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

objections, and the opportunity to be heard. The notice must be updated following this order to reflect the hearing date, time, and place.

Dissemination. Puma has agreed to provide notice to Puma stockholders by filing a Form 8-k with the SEC that includes the Stipulation and Notice. (Stip. § 3.3.) The Stipulation and Notice will also be published on the "Investors" page of Puma's website. (*Id.*) And Puma will publish the Summary Notice (Stip. Ex. D) in *Investor's Business Daily.* (*Id.*) This multi-part method of publishing notice has been approved in similar stockholder derivative settlement. *See, e.g., In re Google Inc. S'holder Derivative Litig.*, No. CV-11-04248-PJH, slip op. (N.D. Cal. Nov. 6, 2014).

The Court finds that both the content and publication method proposed are adequate to notify Puma stockholders about the Settlement and to provide an opportunity for objection and appearance at the hearing. *See* Fed. R. Civ. Proc. 23.1(c). Regarding the timing and cost of issuing notice, the Court ORDERS as follows.

The Stipulation and Notice must be filed with the SEC along with an SEC Form 8-K within 10 business days after entry of this order. Also within that time, Puma must publish the Summary Notice one time in the national edition of *Investor's Business Daily*, and must publish the Stipulation and Notice on an internet page that Puma will create for that purpose. The internet page must be accessible via a link on the "Investors" page of Puma's website, and the address must be contained in the Notice and Summary Notice. Puma must pay all costs incurred in the filing and publishing of Notice and Summary Notice. At least 14 calendar days before the Settlement Hearing, Defendants' counsel must file a declaration regarding the filing and publishing of the Notice and Summary Notice.

## 5. DISPOSITION

The Court GRANTS Plaintiff's unopposed motion for preliminary approval of the derivative settlement. (Dkt. 18.) A settlement hearing will take place on **January 7, 2019** at **10:00 a.m.**. Any holders of Puma common stock may appear and show cause why the Settlement should not be finally approved. Plaintiffs must file a motion for final approval of the Settlement at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-00236 AG (JCGx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

least 21 days before the settlement hearing. Any objections must be filed 14 days before the hearing and served on counsel for Plaintiffs and Defendants at the following addresses:

Ashley R. RifkinRyan E. Blair
ROBBINS ARROYO LLPCOOLEY LLP
600 B Street, Suite 19004401 Eastgate Mall
San Diego, CA 92101San Diego, CA 92121
*Counsel for Plaintiffs**Counsel for Defendants*

Any replies must be filed 7 days before the hearing. All proceedings in this action are STAYED until further order from the Court, except as necessary to implement the Settlement or comply with the terms of the Stipulation.

: 0
Initials of Preparergga