1                    UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3            HONORABLE ANDREW J. GUILFORD, JUDGE PRESIDING

4    ARNAUD VAN DER GRACHT DE           )
     ROMMERSWAEL                        )
5    DERIVATIVELY ON BEHALF OF PUMA     )
     BIOTECHNOLOGY, INC.,               )
6                                       )
                                        )
7                                       )
                        Plaintiffs,  )
8                                       )   No. SACV18-0236-AG
                                        )
9                                       )
            Vs.                         )
10                                      )
                                        )
11                                      )
     ALAN H. AUERBACH, et al.,          )
12                                      )
                                        )
13                      Defendants.  )

14   _____

15

16

17              REPORTER'S TRANSCRIPT OF PROCEEDINGS

18                        MOTION HEARING

19                     SANTA ANA, CALIFORNIA

20                   MONDAY, JANUARY 7, 2019

21

22

23            MIRIAM V. BAIRD, CSR 11893, CCRA
            OFFICIAL U.S. DISTRICT COURT REPORTER
24          411 WEST FOURTH STREET, SUITE 1-053
               SANTA ANA, CALIFORNIA 92701
25                   MVB11893@aol.com

1
$$\underline{A\ P\ P\ E\ A\ R\ A\ N\ C\ E\ S}$$

2

3    **IN BEHALF OF THE PLAINTIFFS,**      ASHLEY R. RIFKIN
     **ARNAUD VAN DER GRACHT DE**           ROBBINS LLP
4    **ROMMERSWAEL**                        5040 SHOREHAM PLACE
     **DERIVATIVELY ON BEHALF OF**          SAN DIEGO, CA 92122
5    **PUMA BIOTECHNOLOGY, INC.:**

6

7

8

9    **IN BEHALF OF THE DEFENDANT,**       JORDAN DAVISSON COOK
     **ALAN AUERBACH:**                     LATHAM AND WATKINS LLP
10                                          650 TOWN CENTER DRIVE 20TH
                                            FLOOR
11                                          COSTA MESA, CA 92626

12                                          RYAN E. BLAIR
                                            COOLEY LLP
13                                          4401 EASTGATE MALL
                                            SAN DIEGO, CA 92121
14

15

16

17

18

19

20

21

22

23

24

25

```
 1        SANTA ANA, CALIFORNIA; MONDAY, JANUARY 7, 2019; 10:31 A.M.

 2                             ---

 3

 4             THE CLERK:  Item 12, SACV18-0236, Arnaud van der

 5   Gracht de Rommerswael vs. Alan Auerbach Inc., et al.

 6             MS. RIFKIN:  Good morning, Your Honor.

 7   Ashley Rifkin on behalf of plaintiff.

 8             MR. BLAIR:  Ryan Blair from Cooley on behalf of

 9   individual defendants.

10             MS. SMITH:  Colleen Smith of Latham & Watkins on

11   behalf of the defendants.

12             THE COURT:  Have you made an appearance in this

13   case?

14             MS. SMITH:  Yes, Your Honor.

15             THE COURT:  Does it matter, but the firm you're

16   with is?

17             MR. BLAIR:  Cooley, Your Honor.

18             THE COURT:  Latham has made an appearance.  I

19   believe -- I'm happy to have you talk and all that.  I'm just

20   wondering.  I just noted all of the Latham people just left.

21   I don't know whether you've made an appearance.  It doesn't

22   matter.  All right.  So please be seated.

23             I -- I had a tentative issued.  It covered

24   everything, which pretty much seemed fine except for the

25   fees.  I -- I want to explore the fee situation.  But before
```

1    I get to the fee situation, let me put our Latham & Watkins

2    friend on the spot and say, is the settlement and its results

3    relevant to the trial that starts on Tuesday?  Have you

4    thought about that?

5            MS. SMITH:  Yes, Your Honor.  It -- I don't believe

6    so.

7            THE COURT:  What do the parties here say?

8    Actually, they probably -- the plaintiff probably says, no

9    dog in that hunt?  What does the plaintiff say?

10           MS. RIFKIN:  That's correct, Your Honor.  I don't

11   think it impacts that as well, as our job here is to promote

12   the best interest of the company.  And I think the settlement

13   we've achieved does that efficiently, and I stand by it.

14           THE COURT:  Okay.  Good.  I wouldn't actually

15   expect more on that.

16           Next, here's my biggest issue.  That is the

17   attorney fees.  That is, gosh, that's a pretty big

18   multiplier, 1.76.  If you were here at the beginning of

19   10:00 o'clock, I gave a multiplier in a contingency-fee case

20   of 1.1 where the likelihood of recovery was highly suspect in

21   a contingency-fee case.  I'm very inclined to give generous

22   multipliers based on contingency.

23           If you had completely reached an impasse with

24   plaintiff and did not reach a class action settlement, you

25   would still get paid, wouldn't you or would you?  Or not?  I

```
1    guess you wouldn't get paid?  Is that right?  Tell me about
2    the contingency of your payment such that I should embrace a
3    multiplier of 1.76?  Anybody?
4           MS. RIFKIN:  Sorry.  I thought you were looking at
5    defense counsel.
6           THE COURT:  Yes.
7           MS. RIFKIN:  Your Honor, I think a little bit of
8    background provides some context here.  The benefits we've
9    achieved here are substantial.  I think that everyone, all of
10   the parties have agreed the benefits achieved are substantial
11   in the company's best interest.
12          THE COURT:  Let me say -- honestly, forgive me.
13   I'm partly talking to the Ninth Circuit.  If I grant these
14   fees, I want to show a careful consideration.  When you say
15   the benefits are substantial, I'll take your word and defense
16   counsel's word and Mr. Lindstrom's word; right?
17          MS. RIFKIN:  That's correct, but --
18          THE COURT:  But let me just say normally, in a
19   class settlement, I will say the Ninth Circuit, to my
20   pleasure, I think over the last five years has looked
21   carefully at fees award in a class action context to make
22   sure they're justified.  Greg Lindstrom is a very respected
23   evaluator.  Counsel on both sides here are all respected.
24   But -- but we're lacking some of the dynamics that allow me
25   in other cases to say the benefits are substantial.  I don't
```

1    know what the internal corporate procedures you've

2    established have value.  It's hard for me to make that

3    evaluation.  Go ahead.

4           MS. RIFKIN:  I'll tell you there's a couple points

5    here.  First of all, it's resolving four shareholder

6    derivative actions, which are different from class actions.

7    These are brought on behalf of the company.

8           THE COURT:  Yes.  Well, yes.

9           MS. RIFKIN:  The critical difference there is

10   first, there's a class action where you don't have the class

11   members at the negotiating table.  Your Honor has to step in

12   and make sure that their interests are adequately protected.

13   Here, you have the parties.  You have the company, on whose

14   behalf the action is brought, negotiating at the negotiation

15   table negotiating both the reforms, as well as the fees that

16   are warranted in light of the benefits achieved.

17          You also have in this settlement the independent

18   directors of Puma's board independently reviewing the terms

19   of the settlement, including the reforms, including the fees,

20   and stating that they are in the company's best interests.

21          On top of that, you have the fees being negotiated

22   between counsel for the parties who are well versed in this

23   litigation, who are well versed in the benefits achieved in

24   comparable settlements, and the fees awarded for those types

25   of benefits.

1          THE COURT:  Now on that, on the issue of

2     contingency and likelihood of recovery, I was sort of looking

3     at the defendants, maybe thinking wrongly that they would be

4     the best to confirm because they have a little less

5     self-interest than you, but it's best -- it's understandable

6     I'm hearing it from you, go ahead.

7          MS. RIFKIN:  I'm happy if they want to speak,

8     but...

9          THE COURT:  I kind of looked at them while I was

10    asking the questions.

11         MS. RIFKIN:  You did.  I believe they looked at me

12    and passed the baton.

13         I'm happy to speak.  I will tell you that those

14    negotiations among experienced counsel were also overseen by

15    Lindstrom, who you just recognized is also experienced in

16    this field.  I will say --

17         THE COURT:  I think -- I think the world of

18    Mr. Lindstrom from Latham & Watkins, as I recall.

19         MS. RIFKIN:  Correct.

20         THE COURT:  Who might have even sought to sit here

21    14 years ago.  Go ahead.

22         MS. RIFKIN:  I think beyond that, what I was going

23    to say is we -- in accordance with Your Honor's preliminary

24    approval order, we disseminated notice.  We haven't received

25    a single objection.  I think that's particularly notable

1    here, because Puma has over 38 million shares outstanding,

2    95 percent of which are held by institutions.

3            Now, these institutions, these entities, mutual

4    funds and such, they're represented by counsel.  They have

5    the experience.  They have the ability.  They have the

6    know-how to object to a settlement when something is awry.

7    Here, not one of them has objected.  I think that's because

8    the benefits achieved in the -- in the form of these

9    corporate governance reforms cannot be disputed.

10           I can go into them.  They are discussed in our

11   papers.

12           THE COURT:  Well, let me do this.  That's a

13   question I have.  Also looking at the defense.  What is the

14   likelihood of you not getting any recovery?

15           MS. RIFKIN:  Here, I think one of the most

16   difficult hurdles derivative actions face are at the pleading

17   stage.

18           THE COURT:  That is true.  Actually, the

19   pre-pleading stage actually.

20           MS. RIFKIN:  In order to step into the shoes of the

21   company, correct.  We have this action before Your Honor, a

22   demand was made on the board.  The board refused it.  We

23   would have to satisfy the heightened standards of showing

24   that the demand was wrongfully refused.

25           The other three actions that are pending that the

1    settlement would resolve alleged that the demand was futile.

2              THE COURT:  Wait.  What was your last phrase?

3              MS. RIFKIN:  Demand was futile.

4              THE COURT:  Yes.  Got it.  Demand was futile.  Got

5    it.

6              MS. RIFKIN:  Just getting past that initial hurdle

7    to step into the shoes of the company is quite high.  And

8    then obviously, you know, the hurdles past that stage.

9              THE COURT:  Okay.  One of the strongest points made

10   in the papers in favor of this settlement are cases you cite

11   on page 6.  Tell me about similar cases.

12             Did you write that or did the defense?

13             MS. RIFKIN:  It was probably us, Your Honor.

14             THE COURT:  Good.

15             MS. RIFKIN:  I can --

16             THE COURT:  I've read it.  There's parenthetical

17   about the relations to this situation and the difficulties

18   and previous payouts.  Do you know of any 1.76 multiplier?

19             MS. RIFKIN:  Yes, a lot, Your Honor.  I think

20   that's actually not unheard of across the country in

21   settlements of shareholder derivative litigation, especially

22   with reforms similar to those that have been achieved here.

23             THE COURT:  Okay.  Do you know of any 1.76 where

24   there was no exchange of money?  Other than, you know, in the

25   settlement?

1       MS. RIFKIN:  Yes.  Yes.  Corporate governance only

2  reforms only, absolutely.  We cited them in our papers.

3       THE COURT:  I'm not sure I picked up -- page 6

4  largely has -- I'm not sure whether I picked up governance

5  only.

6       MS. RIFKIN:  I believe we cited two governance-only

7  settlements as the comparables just to give you perspective

8  that was comparable to that achieved here.

9       THE COURT:  Bottom line on all of this, folks, is

10 the issue of whether a haircut of some sort is in order.

11 Okay.  That's really what I'm looking at here.  And so I

12 would invite your comments on a potential haircut.  In such

13 comments, I guess you've already referred to other cases.

14 You might refer to what was said in the preliminary approval

15 if you like.

16      What do you wish to say about a haircut, modest or

17 otherwise?  First, it shows I'm paying attention, which might

18 help you along the way.

19      MS. RIFKIN:  I think that the settlements -- the

20 comparable settlements that we have submitted to Your Honor

21 reveal that we have already taken a haircut.  The reforms

22 achieved here, they're hard fought.  I will tell you that to

23 get a new independent director on full board is not easy.  To

24 get a new board level committee that is going to specifically

25 oversee all of the companies research developments efforts,

1     all of their communications with the FDA, all their new drug

2     applications, and actually pre-approve all material public

3     disclosures, that's not easy.

4            These reforms were not easy to achieve.  I will

5     tell you that I think they're more valuable than a monetary

6     component in several respects.  If you think about the fact

7     that they will reduce the likelihood of similar misstatements

8     in the future and hopefully deter the litigation that Your

9     Honor is well familiar with at this stage in connection with

10    the securities class action, the value of those reforms well

11    exceeds, I think, some monetary components that are often

12    achieved here.  So...

13           THE COURT:  All right.  Counsel, you're doing an

14    excellent job providing me comfort.  I must say, you are --

15    you are parrying each of my thrusts up.  Let's talk about

16    public policy.  I'm on the board.  They come in and say, hey,

17    board, we want to spend some seven-figure fee to some big

18    accounting company to advise us on our corporate structure.

19    Let's say that happens.  Isn't that a better way of looking

20    at corporate structure than, no offense, plaintiffs' lawyers

21    in a derivative action?

22           In other words, do I really want to set -- do I

23    want to promote a situation where corporate -- where the --

24    where the board says no, no, don't go hiring that accounting

25    firm because by golly, we're going to get a derivative

```
 1   action, and I'd rather the money go to a plaintiff after they
 2   release all their claims, et cetera, et cetera.  What about
 3   that?
 4           MS. RIFKIN:  I think I'm understanding you
 5   correctly.  My response is --
 6           THE COURT:  I'll make it simpler.  What's the best
 7   way for a corporation concerned about its management
 8   structure to get clear reliable answers from an accounting
 9   firm they pay seven figures to or a plaintiffs' derivative
10   class action lawyer they pay seven figures to.
11           MS. RIFKIN:  Well, I'll tell you, first of all,
12   we've been doing this for a long time --
13           THE COURT:  I'm asking the right person.
14           MS. RIFKIN:  I've been doing it for over a decade.
15   We negotiate a lot of reforms.  We don't just pick them out
16   of the air.  We -- we research best practices in companies of
17   comparable businesses.  So we looked at pharmaceutical --
18           THE COURT:  Yeah -- I think the accounting firm
19   would do the same.
20           MS. RIFKIN:  Right.  Correct.  Here we have --
21   we've implemented a lot of controls that I don't think can be
22   disputed are in the best interest of the company.  Might
23   there be more that we couldn't get agreement on that maybe
24   some other independent firm would get the company to do,
25   maybe.  The ones we achieved here are fantastic.
```

1      I will also say that our fees are being paid by the

2  company's insurers, which is also most efficient for the

3  company.

4           THE COURT:  Is that a relevant consideration?

5           MS. RIFKIN:  It's not a relevant consideration, but

6  you did mention that the company would pay an outside

7  consultant.  Here, it's not coming out of the company --

8           THE COURT:  Oh, my goodness gracious.  That is an

9  interesting issue.  You know, we have the collateral source

10  rule.  I don't think that really applies.  I don't even think

11  its policy applies here.  I'm hearing you.  Again, I'm not

12  sure it's relevant for you to mention or me to consider, but

13  gosh, there it is.  Go ahead.

14           MS. RIFKIN:  I more just wanted to make

15  sure that --

16           THE COURT:  I'm not being critical of you at all.

17  I am just saying that's an interesting point.  I can see a

18  board saying let's not hire that accounting firm, because if

19  we get sued, we can get it paid by the carrier.

20           MS. RIFKIN:  That was not my point, Your Honor.

21           THE COURT:  Well, it's a response to the question I

22  asked previously about.

23           MS. RIFKIN:  I will tell you a lot of times we ask

24  companies in negotiating reforms to -- within the next three

25  years, for example, hire an outside consultant to do exactly

1   what Your Honor says.  A lot of times we get pushback.  I

2   don't recall whether we specifically asked for that here or

3   not, but a lot of times we get pushback because of the cost.

4   The company is not wanting to pay that amount.  So it's not

5   as simple as a board saying yeah, we'll do that instead,

6   because we are ourselves don't always get agreement on that.

7           THE COURT:  Okay.  I asked you to give me all your

8   arguments against a haircut.  Anything else you wish to say

9   about that?

10          MS. RIFKIN:  Just that the settlement is approved

11   by the parties.  It was overseen by a mediator, all of whom

12   are well versed in this litigation and recognize the benefits

13   achieved.  That that was the impetus of our negotiating the

14   fee, was the benefits achieved.  If you look at the

15   comparable settlements, they fully support both the fee as

16   well as the multiplier.  So I respectfully submit that a

17   haircut is not necessary here.

18          THE COURT:  One last question.  I'll give a chance

19   to the defense if they wish to say anything.  Do you know

20   often in class action settlements, I know this isn't class

21   action, but it's got parallels.  I need to be concerned about

22   parties not directly present here in the courtroom.  In a lot

23   of settlements, class action and otherwise, I get told that,

24   Your Honor, this is a 1.8 multiplier.  You've done this many

25   times in this many cases.  You did it in that case where

1    there wasn't even a possibility of no recovery.

2           My rulings on multipliers get quoted back to me, as

3    well as reasonableness of fees in general.  Your Honor, you

4    gave a seven-figure recovery where there was nothing there

5    monetarily for the people.

6           Do you have a quick response other than what you've

7    already said?  It's implicit in a lot of things you say,

8    arguments I can make.  What if that 1.76 gets cited back to

9    me in a basically no-recovery case, something the Ninth

10   Circuit has occasionally looked at in class actions in a

11   no-recovery case?  Go ahead.

12          MS. RIFKIN:  Your Honor, I think that there is

13   always many factors that go into approval of a settlement,

14   including approval of a multiplier.  Here, the benefits

15   achieved, which is the principal factor to be looked at,

16   fully support that multiplier.

17          With that, as well as the presence of a mediator,

18   as well as the presence of litigating on a contingency basis,

19   there's several factors here that should provide you comfort

20   with approving a multiplier of 1.76.

21          This is a subtle side remark, but I did notice that

22   the multiplier 1.76 multiplier was calculated without first

23   backing out the expenses.  So if you do back out the

24   expenses, it does go down to 1.72.  It's not much.  I did

25   want to make that known.

1          I think what Your Honor says on the record when

2     approving multipliers, including what we've talked about

3     today in your concern, I think that it should provide

4     hesitation for somebody to, you know, quote back to you

5     without similar comparable circumstances.

6          THE COURT:  Very well stated.  I appreciate your

7     arguments.  You had answers to all my questions.

8          Anything else?

9          MS. RIFKIN:  No, Your Honor.

10          THE COURT:  Anything else from the defense?  By the

11     way, I'm going to take it under submission and consider, like

12     I said, the possibility of a haircut.  You -- you can rely on

13     the settlement being approved.  The question is would there

14     be a haircut.  I can now tell you the haircut would be

15     modest, if any.  That's where we're at.

16          Let's hear from the defense if they have anything

17     to say?

18          MR. BLAIR:  Nothing from us, Your Honor, unless you

19     have questions.  Ms. Rifkin stated everything.

20          THE COURT:  Anything else?

21          MS. SMITH:  No, Your Honor.

22          THE COURT:  Thank you.  It's under submission.

23     We'll get an order out shortly.

24          MS. RIFKIN:  Thank you, Your Honor.

25          MR. BLAIR:  Thank you, Your Honor.

1          MS. SMITH:  Thank you, Your Honor.

2          (Proceedings concluded at 10:51 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

```
 1                           CERTIFICATE

 2   I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

 3   TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

 4   THE ABOVE MATTER.

 5   FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

 6   REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

 7   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

 8

 9   /s/ Miriam V. Baird            08/03/2020

10   MIRIAM V. BAIRD                         DATE
     OFFICIAL REPORTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## /

/s [1] - 17:10

## 0

08/03/2020 [1] - 17:10

## 1

1-053 [1] - 1:24
1.1 [1] - 4:20
1.72 [1] - 15:24
1.76 [7] - 4:18, 5:3, 9:18, 9:23, 15:8, 15:20, 15:22
1.8 [1] - 14:24
10:00 [1] - 4:19
10:31 [1] - 3:1
10:51 [1] - 17:1
11893 [1] - 1:23
12 [1] - 3:4
14 [1] - 7:21

## 2

2019 [2] - 1:20, 3:1
20TH [1] - 2:10

## 3

38 [1] - 8:1

## 4

411 [1] - 1:24
4401 [1] - 2:13

## 5

5040 [1] - 2:4

## 6

6 [2] - 9:11, 10:3
650 [1] - 2:10

## 7

7 [2] - 1:20, 3:1

## 9

92121 [1] - 2:13
92122 [1] - 2:4
92626 [1] - 2:11
92701 [1] - 1:24
95 [1] - 8:2

## A

A.M [1] - 3:1

---

a.m [1] - 17:1
ability [1] - 8:5
ABOVE [1] - 17:5
absolutely [1] - 10:2
accordance [1] - 7:23
accounting [5] - 11:18, 11:24, 12:8, 12:18, 13:18
achieve [1] - 11:4
achieved [14] - 4:13, 5:9, 5:10, 6:16, 6:23, 8:8, 9:22, 10:8, 10:22, 11:12, 12:25, 14:13, 14:14, 15:15
action [12] - 4:24, 5:21, 6:10, 6:14, 8:21, 11:10, 11:21, 12:1, 12:10, 14:20, 14:21, 14:23
actions [5] - 6:6, 8:16, 8:25, 15:10
adequately [1] - 6:12
advise [1] - 11:18
ago [1] - 7:21
agreed [1] - 5:10
agreement [2] - 12:23, 14:6
ahead [5] - 6:3, 7:6, 7:21, 13:13, 15:11
air [1] - 12:16
al [2] - 1:11, 3:5
Alan [1] - 3:5
ALAN [2] - 1:11, 2:9
alleged [1] - 9:1
allow [1] - 5:24
amount [1] - 14:4
ANA [3] - 1:19, 1:24, 3:1
AND [2] - 2:9, 17:3
AND/OR [1] - 17:7
ANDREW [1] - 1:3
answers [2] - 12:8, 16:7
ANY [1] - 17:6
appearance [3] - 3:12, 3:18, 3:21
applications [1] - 11:2
applies [2] - 13:10, 13:11
appreciate [1] - 16:6
approval [4] - 7:24, 10:14, 15:13, 15:14
approve [1] - 11:2
approved [2] - 14:10, 16:13
approving [2] - 15:20, 16:2
ARE [1] - 17:7
arguments [3] - 14:8, 15:8, 16:7
ARNAUD [2] - 1:4, 2:3
Arnaud [1] - 3:4
ASHLEY [1] - 2:3
Ashley [1] - 3:7
attention [1] - 10:17
attorney [1] - 4:17
AUERBACH [2] - 1:11, 2:9
Auerbach [1] - 3:5
award [1] - 5:21
awarded [1] - 6:24
awry [1] - 8:6

## B

background [1] - 5:8

---

backing [1] - 15:23
BAIRD [2] - 1:23, 17:11
Baird [1] - 17:10
based [1] - 4:22
basis [1] - 15:18
baton [1] - 7:12
beginning [1] - 4:18
BEHALF [4] - 1:5, 2:3, 2:4, 2:9
behalf [5] - 3:7, 3:8, 3:11, 6:7, 6:14
benefits [11] - 5:8, 5:10, 5:15, 5:25, 6:16, 6:23, 6:25, 8:8, 14:12, 14:14, 15:14
best [8] - 4:12, 5:11, 6:20, 7:4, 7:5, 12:6, 12:16, 12:22
better [1] - 11:19
between [1] - 6:22
beyond [1] - 7:22
big [2] - 4:17, 11:17
biggest [1] - 4:16
BIOTECHNOLOGY [2] - 1:5, 2:5
bit [1] - 5:7
BLAIR [5] - 2:12, 3:8, 3:17, 16:18, 16:25
Blair [1] - 3:8
board [10] - 6:18, 8:22, 10:23, 10:24, 11:16, 11:17, 11:24, 13:18, 14:5
bottom [1] - 10:9
brought [2] - 6:7, 6:14
businesses [1] - 12:17
but.. [1] - 7:8

## C

CA [3] - 2:4, 2:11, 2:13
calculated [1] - 15:22
CALIFORNIA [4] - 1:2, 1:19, 1:24, 3:1
cannot [1] - 8:9
careful [1] - 5:14
carefully [1] - 5:21
carrier [1] - 13:19
case [6] - 3:13, 4:19, 4:21, 14:25, 15:9, 15:11
cases [5] - 5:25, 9:10, 9:11, 10:13, 14:25
CCRA [1] - 1:23
CENTER [1] - 2:10
CENTRAL [1] - 1:2
CERTIFICATE [1] - 17:2
CERTIFY [1] - 17:3
cetera [2] - 12:2
chance [1] - 14:18
CHARGED [1] - 17:6
Circuit [3] - 5:13, 5:19, 15:10
CIRCUIT [1] - 17:6
circumstances [1] - 16:5
cite [1] - 9:10
cited [3] - 10:2, 10:6, 15:8
claims [1] - 12:2
class [12] - 4:24, 5:19, 5:21, 6:6, 6:10, 11:10, 12:10, 14:20, 14:23, 15:10

**clear** [1] - 12:8
**CLERK** [1] - 3:4
**collateral** [1] - 13:9
**Colleen** [1] - 3:10
**comfort** [2] - 11:14, 15:19
**coming** [1] - 13:7
**comments** [2] - 10:12, 10:13
**committee** [1] - 10:24
**communications** [1] - 11:1
**companies** [3] - 10:25, 12:16, 13:24
**company** [12] - 4:12, 6:7, 6:13, 8:21, 9:7, 11:18, 12:22, 12:24, 13:3, 13:6, 13:7, 14:4
**company's** [3] - 5:11, 6:20, 13:2
**comparable** [6] - 6:24, 10:8, 10:20, 12:17, 14:15, 16:5
**comparables** [1] - 10:7
**completely** [1] - 4:23
**component** [1] - 11:6
**components** [1] - 11:11
**concern** [1] - 16:3
**concerned** [2] - 12:7, 14:21
**concluded** [1] - 17:1
**CONFERENCE** [1] - 17:8
**confirm** [1] - 7:4
**CONFORMANCE** [1] - 17:7
**connection** [1] - 11:9
**consider** [2] - 13:12, 16:11
**consideration** [3] - 5:14, 13:4, 13:5
**consultant** [2] - 13:7, 13:25
**context** [2] - 5:8, 5:21
**contingency** [6] - 4:19, 4:21, 4:22, 5:2, 7:2, 15:18
**contingency-fee** [2] - 4:19, 4:21
**controls** [1] - 12:21
**COOK** [1] - 2:9
**COOLEY** [1] - 2:12
**Cooley** [2] - 3:8, 3:17
**corporate** [6] - 6:1, 8:9, 10:1, 11:18, 11:20, 11:23
**corporation** [1] - 12:7
**correct** [5] - 4:10, 5:17, 7:19, 8:21, 12:20
**CORRECT** [1] - 17:3
**correctly** [1] - 12:5
**cost** [1] - 14:3
**COSTA** [1] - 2:11
**counsel** [6] - 5:5, 5:23, 6:22, 7:14, 8:4, 11:13
**counsel's** [1] - 5:16
**country** [1] - 9:20
**couple** [1] - 6:4
**COURT** [39] - 1:1, 1:23, 3:12, 3:15, 3:18, 4:7, 4:14, 5:6, 5:12, 5:18, 6:8, 7:1, 7:9, 7:17, 7:20, 8:12, 8:18, 9:2, 9:4, 9:9, 9:14, 9:16, 9:23, 10:3, 10:9, 11:13, 12:6, 12:13, 12:18, 13:4, 13:8, 13:16, 13:21, 14:7, 14:18, 16:6, 16:10, 16:20, 16:22

**courtroom** [1] - 14:22
**covered** [1] - 3:23
**critical** [2] - 6:9, 13:16
**CSR** [1] - 1:23

**D**

**DATE** [1] - 17:11
**DAVISSON** [1] - 2:9
**DE** [2] - 1:4, 2:3
**de** [1] - 3:5
**decade** [1] - 12:14
**DEFENDANT** [1] - 2:9
**Defendants** [1] - 1:13
**defendants** [3] - 3:9, 3:11, 7:3
**defense** [7] - 5:5, 5:15, 8:13, 9:12, 14:19, 16:10, 16:16
**demand** [5] - 8:22, 8:24, 9:1, 9:3, 9:4
**DEPOSIT** [1] - 17:7
**der** [1] - 3:4
**DER** [2] - 1:4, 2:3
**derivative** [6] - 6:6, 8:16, 9:21, 11:21, 11:25, 12:9
**DERIVATIVELY** [2] - 1:5, 2:4
**deter** [1] - 11:8
**developments** [1] - 10:25
**DIEGO** [2] - 2:4, 2:13
**difference** [1] - 6:9
**different** [1] - 6:6
**difficult** [1] - 8:16
**difficulties** [1] - 9:17
**directly** [1] - 14:22
**director** [1] - 10:23
**directors** [1] - 6:18
**disclosures** [1] - 11:3
**discussed** [1] - 8:10
**disputed** [2] - 8:9, 12:22
**disseminated** [1] - 7:24
**DISTRICT** [3] - 1:1, 1:2, 1:23
**dog** [1] - 4:9
**done** [1] - 14:24
**down** [1] - 15:24
**DRIVE** [1] - 2:10
**drug** [1] - 11:1
**dynamics** [1] - 5:24

**E**

**EASTGATE** [1] - 2:13
**easy** [3] - 10:23, 11:3, 11:4
**efficient** [1] - 13:2
**efficiently** [1] - 4:13
**efforts** [1] - 10:25
**embrace** [1] - 5:2
**entities** [1] - 8:3
**especially** [1] - 9:21
**established** [1] - 6:2
**et** [4] - 1:11, 3:5, 12:2
**evaluation** [1] - 6:3

**evaluator** [1] - 5:23
**exactly** [1] - 13:25
**example** [1] - 13:25
**exceeds** [1] - 11:11
**excellent** [1] - 11:14
**except** [1] - 3:24
**exchange** [1] - 9:24
**expect** [1] - 4:15
**expenses** [2] - 15:23, 15:24
**experience** [1] - 8:5
**experienced** [2] - 7:14, 7:15
**explore** [1] - 3:25

**F**

**face** [1] - 8:16
**fact** [1] - 11:6
**factor** [1] - 15:15
**factors** [2] - 15:13, 15:19
**familiar** [1] - 11:9
**fantastic** [1] - 12:25
**favor** [1] - 9:10
**FDA** [1] - 11:1
**fee** [7] - 3:25, 4:1, 4:19, 4:21, 11:17, 14:14, 14:15
**FEE** [1] - 17:6
**FEES** [1] - 17:6
**fees** [10] - 3:25, 4:17, 5:14, 5:21, 6:15, 6:19, 6:21, 6:24, 13:1, 15:3
**field** [1] - 7:16
**figure** [1] - 11:17, 15:4
**figures** [2] - 12:9, 12:10
**fine** [1] - 3:24
**firm** [6] - 3:15, 11:25, 12:9, 12:18, 12:24, 13:18
**first** [5] - 6:5, 6:10, 10:17, 12:11, 15:22
**five** [1] - 5:20
**FLOOR** [1] - 2:10
**folks** [1] - 10:9
**FOR** [1] - 17:6
**FOREGOING** [1] - 17:3
**forgive** [1] - 5:12
**form** [1] - 8:8
**fought** [1] - 10:22
**four** [1] - 6:5
**FOURTH** [1] - 1:24
**friend** [1] - 4:2
**full** [1] - 10:23
**fully** [2] - 14:15, 15:16
**funds** [1] - 8:4
**futile** [3] - 9:1, 9:3, 9:4
**future** [1] - 11:8

**G**

**general** [1] - 15:3
**generous** [1] - 4:21
**golly** [1] - 11:25
**goodness** [1] - 13:8

gosh [2] - 4:17, 13:13
governance [4] - 8:9, 10:1, 10:4, 10:6
governance-only [1] - 10:6
Gracht [1] - 3:5
GRACHT [2] - 1:4, 2:3
gracious [1] - 13:8
grant [1] - 5:13
Greg [1] - 5:22
guess [2] - 5:1, 10:13
GUILFORD [1] - 1:3

## H

haircut [9] - 10:10, 10:12, 10:16, 10:21,
 14:8, 14:17, 16:12, 16:14
happy [3] - 3:19, 7:7, 7:13
hard [2] - 6:2, 10:22
hear [1] - 16:16
hearing [2] - 7:6, 13:11
HEARING [1] - 1:18
heightened [1] - 8:23
held [1] - 8:2
help [1] - 10:18
HEREBY [1] - 17:3
hesitation [1] - 16:4
high [1] - 9:7
highly [1] - 4:20
hire [2] - 13:18, 13:25
hiring [1] - 11:24
honestly [1] - 5:12
Honor [23] - 3:6, 3:14, 3:17, 4:5, 4:10,
 5:7, 6:11, 8:21, 9:13, 9:19, 10:20,
 11:9, 13:20, 14:1, 14:24, 15:3, 15:12,
 16:1, 16:9, 16:18, 16:21, 16:24, 16:25
Honor's [1] - 7:23
HONORABLE [1] - 1:3
hopefully [1] - 11:8
hunt [1] - 4:9
hurdle [1] - 9:6
hurdles [2] - 8:16, 9:8

## I

impacts [1] - 4:11
impasse [1] - 4:23
impetus [1] - 14:13
implemented [1] - 12:21
implicit [1] - 15:7
IN [4] - 2:3, 2:9, 17:4, 17:7
Inc [1] - 3:5
INC [2] - 1:5, 2:5
inclined [1] - 4:21
including [4] - 6:19, 15:14, 16:2
independent [3] - 6:17, 10:23, 12:24
independently [1] - 6:18
individual [1] - 3:9
initial [1] - 9:6
instead [1] - 14:5
institutions [2] - 8:2, 8:3

insurers [1] - 13:2
interest [4] - 4:12, 5:11, 7:5, 12:22
interesting [2] - 13:9, 13:17
interests [2] - 6:12, 6:20
internal [1] - 6:1
invite [1] - 10:12
IS [1] - 17:3
issue [4] - 4:16, 7:1, 10:10, 13:9
issued [1] - 3:23
item [1] - 3:4

## J

JANUARY [2] - 1:20, 3:1
job [2] - 4:11, 11:14
JORDAN [1] - 2:9
JUDGE [1] - 1:3
JUDICIAL [1] - 17:8
justified [1] - 5:22

## K

kind [1] - 7:9
know-how [1] - 8:6
known [1] - 15:25

## L

lacking [1] - 5:24
largely [1] - 10:4
last [3] - 5:20, 9:2, 14:18
Latham [3] - 3:10, 3:18, 3:20, 4:1, 7:18
LATHAM [1] - 2:9
lawyer [1] - 12:10
lawyers [1] - 11:20
left [1] - 3:20
LESS [1] - 17:6
less [1] - 7:4
level [1] - 10:24
light [1] - 6:16
likelihood [4] - 4:20, 7:2, 8:14, 11:7
Lindstrom [3] - 5:22, 7:15, 7:18
Lindstrom's [1] - 5:16
line [1] - 10:9
litigating [1] - 15:18
litigation [4] - 6:23, 9:21, 11:8, 14:12
LLP [3] - 2:3, 2:9, 2:12
look [1] - 14:14
looked [6] - 5:20, 7:9, 7:11, 12:17,
 15:10, 15:15
looking [5] - 5:4, 7:2, 8:13, 10:11, 11:19

## M

MALL [1] - 2:13
management [1] - 12:7
material [1] - 11:2
matter [2] - 3:15, 3:22
MATTER [1] - 17:5
mediator [2] - 14:11, 15:17

members [1] - 6:11
mention [2] - 13:6, 13:12
MESA [1] - 2:11
might [4] - 7:20, 10:14, 10:17, 12:22
million [1] - 8:1
MIRIAM [2] - 1:23, 17:11
Miriam [1] - 17:10
misstatements [1] - 11:7
modest [2] - 10:16, 16:15
MONDAY [2] - 1:20, 3:1
monetarily [1] - 15:5
monetary [2] - 11:5, 11:11
money [2] - 9:24, 12:1
morning [1] - 3:6
most [2] - 8:15, 13:2
MOTION [1] - 1:18
MR [4] - 3:8, 3:17, 16:18, 16:25
MS [37] - 3:6, 3:10, 3:14, 4:5, 4:10, 5:4,
 5:7, 5:17, 6:4, 6:9, 7:7, 7:11, 7:19,
 7:22, 8:15, 8:20, 9:3, 9:6, 9:13, 9:15,
 9:19, 10:1, 10:6, 10:19, 12:4, 12:11,
 12:14, 12:20, 13:5, 13:14, 13:20,
 13:23, 14:10, 15:12, 16:9, 16:21,
 16:24
multiplier [11] - 4:18, 4:19, 5:3, 9:18,
 14:16, 14:24, 15:14, 15:16, 15:20,
 15:22
multipliers [3] - 4:22, 15:2, 16:2
must [1] - 11:14
mutual [1] - 8:3
MVB11893@aol.com [1] - 1:25

## N

necessary [1] - 14:17
need [1] - 14:21
negotiate [1] - 12:15
negotiated [1] - 6:21
negotiating [5] - 6:11, 6:14, 6:15, 13:24,
 14:13
negotiation [1] - 6:14
negotiations [1] - 7:14
new [3] - 10:23, 10:24, 11:1
next [2] - 4:16, 13:24
Ninth [3] - 5:13, 5:19, 15:9
no-recovery [2] - 15:9, 15:11
normally [1] - 5:18
notable [1] - 7:25
noted [1] - 3:20
nothing [2] - 15:4, 16:18
notice [2] - 7:24, 15:21

## O

o'clock [1] - 4:19
object [1] - 8:6
objected [1] - 8:7
objection [1] - 7:25
obviously [1] - 9:8
occasionally [1] - 15:10

**OF** [9] - 1:2, 1:5, 1:17, 2:3, 2:4, 2:9, 17:4, 17:8
**offense** [1] - 11:20
**OFFICIAL** [2] - 1:23, 17:11
**often** [2] - 11:11, 14:20
**ON** [2] - 1:5, 2:4
**one** [4] - 8:7, 8:15, 9:9, 14:18
**ones** [1] - 12:25
**order** [4] - 7:24, 8:20, 10:10, 16:23
**otherwise** [2] - 10:17, 14:23
**ourselves** [1] - 14:6
**outside** [2] - 13:6, 13:25
**outstanding** [1] - 8:1
**oversee** [1] - 10:25
**overseen** [2] - 7:14, 14:11

**P**

**page** [2] - 9:11, 10:3
**paid** [4] - 4:25, 5:1, 13:1, 13:19
**papers** [3] - 8:11, 9:10, 10:2
**parallels** [1] - 14:21
**parenthetical** [1] - 9:16
**parrying** [1] - 11:15
**particularly** [1] - 7:25
**parties** [6] - 4:7, 5:10, 6:13, 6:22, 14:11, 14:22
**partly** [1] - 5:13
**passed** [1] - 7:12
**past** [2] - 9:6, 9:8
**pay** [4] - 12:9, 12:10, 13:6, 14:4
**paying** [1] - 10:17
**payment** [1] - 5:2
**payouts** [1] - 9:18
**pending** [1] - 8:25
**people** [2] - 3:20, 15:5
**percent** [1] - 8:2
**person** [1] - 12:13
**perspective** [1] - 10:7
**pharmaceutical** [1] - 12:17
**phrase** [1] - 9:2
**pick** [1] - 12:15
**picked** [2] - 10:3, 10:4
**PLACE** [1] - 2:4
**plaintiff** [5] - 3:7, 4:8, 4:9, 4:24, 12:1
**Plaintiffs** [1] - 1:7
**PLAINTIFFS** [1] - 2:3
**plaintiffs'** [2] - 11:20, 12:9
**pleading** [2] - 8:16, 8:19
**pleasure** [1] - 5:20
**point** [2] - 13:17, 13:20
**points** [2] - 6:4, 9:9
**policy** [2] - 11:16, 13:11
**possibility** [2] - 15:1, 16:12
**potential** [1] - 10:12
**practices** [1] - 12:16
**pre** [2] - 8:19, 11:2
**pre-approve** [1] - 11:2
**pre-pleading** [1] - 8:19

**preliminary** [2] - 7:23, 10:14
**presence** [2] - 15:17, 15:18
**present** [1] - 14:22
**PRESIDING** [1] - 1:3
**pretty** [2] - 3:24, 4:17
**previous** [1] - 9:18
**previously** [1] - 13:22
**principal** [1] - 15:15
**procedures** [1] - 6:1
**PROCEEDINGS** [2] - 1:17, 17:4
**Proceedings** [1] - 17:1
**promote** [2] - 4:11, 11:23
**protected** [1] - 6:12
**provide** [2] - 15:19, 16:3
**provides** [1] - 5:8
**providing** [1] - 11:14
**public** [2] - 11:2, 11:16
**Puma** [1] - 8:1
**PUMA** [2] - 1:5, 2:5
**Puma's** [1] - 6:18
**pushback** [2] - 14:1, 14:3
**put** [1] - 4:1

**Q**

**questions** [3] - 7:10, 16:7, 16:19
**quick** [1] - 15:6
**quite** [1] - 9:7
**quote** [1] - 16:4
**quoted** [1] - 15:2

**R**

**rather** [1] - 12:1
**reach** [1] - 4:24
**reached** [1] - 4:23
**read** [1] - 9:16
**really** [3] - 10:11, 11:22, 13:10
**reasonableness** [1] - 15:3
**received** [1] - 7:24
**recognize** [1] - 14:12
**recognized** [1] - 7:15
**record** [1] - 16:1
**RECORDED** [1] - 17:4
**recovery** [7] - 4:20, 7:2, 8:14, 15:1, 15:4, 15:9, 15:11
**reduce** [1] - 11:7
**REDUCTION** [1] - 17:7
**refer** [1] - 10:14
**referred** [1] - 10:13
**reforms** [10] - 6:15, 6:19, 8:9, 9:22, 10:2, 10:21, 11:4, 11:10, 12:15, 13:24
**refused** [2] - 8:22, 8:24
**REGULATIONS** [1] - 17:8
**relations** [1] - 9:17
**release** [1] - 12:2
**relevant** [4] - 4:3, 13:4, 13:5, 13:12
**reliable** [1] - 12:8
**rely** [1] - 16:12

**remark** [1] - 15:21
**REPORTER** [2] - 1:23, 17:11
**REPORTER'S** [1] - 1:17
**represented** [1] - 8:4
**research** [2] - 10:25, 12:16
**resolve** [1] - 9:1
**resolving** [1] - 6:5
**respected** [2] - 5:22, 5:23
**respectfully** [1] - 14:16
**respects** [1] - 11:6
**response** [3] - 12:5, 13:21, 15:6
**results** [1] - 4:2
**reveal** [1] - 10:21
**reviewing** [1] - 6:18
**RIFKIN** [34] - 2:3, 3:6, 4:10, 5:4, 5:7, 5:17, 6:4, 6:9, 7:7, 7:11, 7:19, 7:22, 8:15, 8:20, 9:3, 9:6, 9:13, 9:15, 9:19, 10:1, 10:6, 10:19, 12:4, 12:11, 12:14, 12:20, 13:5, 13:14, 13:20, 13:23, 14:10, 15:12, 16:9, 16:24
**Rifkin** [2] - 3:7, 16:19
**ROBBINS** [1] - 2:3
**ROMMERSWAEL** [2] - 1:4, 2:4
**Rommerswael** [1] - 3:5
**rule** [1] - 13:10
**rulings** [1] - 15:2
**RYAN** [1] - 2:12
**Ryan** [1] - 3:8

**S**

**SACV18-0236** [1] - 3:4
**SACV18-0236-AG** [1] - 1:8
**SAN** [2] - 2:4, 2:13
**SANTA** [3] - 1:19, 1:24, 3:1
**satisfy** [1] - 8:23
**seated** [1] - 3:22
**securities** [1] - 11:10
**see** [1] - 13:17
**self** [1] - 7:5
**self-interest** [1] - 7:5
**set** [1] - 11:22
**settlement** [13] - 4:2, 4:12, 4:24, 5:19, 6:17, 6:19, 8:6, 9:1, 9:10, 9:25, 14:10, 15:13, 16:13
**settlements** [8] - 6:24, 9:21, 10:7, 10:19, 10:20, 14:15, 14:20, 14:23
**seven** [4] - 11:17, 12:9, 12:10, 15:4
**seven-figure** [2] - 11:17, 15:4
**several** [2] - 11:6, 15:19
**shareholder** [2] - 6:5, 9:21
**shares** [1] - 8:1
**shoes** [2] - 8:20, 9:7
**SHOREHAM** [1] - 2:4
**shortly** [1] - 16:23
**show** [1] - 5:14
**showing** [1] - 8:23
**shows** [1] - 10:17
**side** [1] - 15:21

sides [1] - 5:23
similar [4] - 9:11, 9:22, 11:7, 16:5
simple [1] - 14:5
simpler [1] - 12:6
single [1] - 7:25
sit [1] - 7:20
situation [4] - 3:25, 4:1, 9:17, 11:23
SMITH [4] - 3:10, 3:14, 4:5, 16:21
Smith [1] - 3:10
so.. [1] - 11:12
sorry [1] - 5:4
sort [2] - 7:2, 10:10
sought [1] - 7:20
source [1] - 13:9
specifically [2] - 10:24, 14:2
spend [1] - 11:17
spot [1] - 4:2
stage [4] - 8:17, 8:19, 9:8, 11:9
stand [1] - 4:13
standards [1] - 8:23
starts [1] - 4:3
STATES [2] - 1:1, 17:8
stating [1] - 6:20
STENOGRAPHICALLY [1] - 17:4
step [3] - 6:11, 8:20, 9:7
still [1] - 4:25
STREET [1] - 1:24
strongest [1] - 9:9
structure [3] - 11:18, 11:20, 12:8
submission [2] - 16:11, 16:22
submit [1] - 14:16
submitted [1] - 10:20
substantial [4] - 5:9, 5:10, 5:15, 5:25
subtle [1] - 15:21
sued [1] - 13:19
SUITE [1] - 1:24
support [2] - 14:15, 15:16
suspect [1] - 4:20

### T

table [2] - 6:11, 6:15
tentative [1] - 3:23
terms [1] - 6:18
THAT [1] - 17:3
THE [46] - 2:3, 2:9, 3:4, 3:12, 3:15, 3:18,
    4:7, 4:14, 5:6, 5:12, 5:18, 6:8, 7:1, 7:9,
    7:17, 7:20, 8:12, 8:18, 9:2, 9:4, 9:9,
    9:14, 9:16, 9:23, 10:3, 10:9, 11:13,
    12:6, 12:13, 12:18, 13:4, 13:8, 13:16,
    13:21, 14:7, 14:18, 16:6, 16:10, 16:20,
    16:22, 17:3, 17:4, 17:5, 17:7, 17:8
thinking [1] - 7:3
THIS [1] - 17:6
three [2] - 8:25, 13:24
thrusts [1] - 11:15
today [1] - 16:3
top [1] - 6:21
TOWN [1] - 2:10

TRANSCRIPT [3] - 1:17, 17:4, 17:6
trial [1] - 4:3
TRUE [1] - 17:3
true [1] - 8:18
Tuesday [1] - 4:3
two [1] - 10:6
types [1] - 6:24

### U

U.S [1] - 1:23
under [2] - 16:11, 16:22
understandable [1] - 7:5
unheard [1] - 9:20
UNITED [2] - 1:1, 17:8
unless [1] - 16:18
up [3] - 10:3, 10:4, 11:15

### V

valuable [1] - 11:5
value [2] - 6:2, 11:10
VAN [2] - 1:4, 2:3
van [1] - 3:4
versed [3] - 6:22, 6:23, 14:12
vs [1] - 3:5
Vs [1] - 1:9

### W

wait [1] - 9:2
warranted [1] - 6:16
Watkins [3] - 3:10, 4:1, 7:18
WATKINS [1] - 2:9
WEST [1] - 1:24
wish [3] - 10:16, 14:8, 14:19
WITH [1] - 17:7
wondering [1] - 3:20
word [3] - 5:15, 5:16
words [1] - 11:22
world [1] - 7:17
write [1] - 9:12
wrongfully [1] - 8:24
wrongly [1] - 7:3

### Y

years [3] - 5:20, 7:21, 13:25